**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-1338**

─────────────

ERICK JESUS FLORES-TURCIOS,

Petitioner,

v.

TODD W. BLANCHE, Acting Attorney General,

Respondent.

─────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

─────────────

Argued: March 17, 2026                              Decided: July 16, 2026

─────────────

Before NIEMEYER, AGEE, and RICHARDSON, Circuit Judges.

─────────────

Petition for review denied by published opinion. Judge Richardson wrote the opinion, in which Judges Niemeyer and Agee joined.

─────────────

**ARGUED:** Arnedo Silvano Valera, LAW OFFICES OF VALERA & ASSOCIATES P.C., Fairfax, Virginia, for Petitioner. Shahrzad Baghai, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian Boynton, Principal Deputy Assistant Attorney General, Sabatino F. Leo, Assistant Director, Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

1

RICHARDSON, Circuit Judge:

Erick Flores-Turcios, a native and citizen of Guatemala, petitions for review of an order of the Board of Immigration Appeals denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Because substantial evidence supports the Board's dispositive factual findings, we deny the petition.

## I.    BACKGROUND

Flores-Turcios entered the United States without inspection in 2016 and was detained shortly thereafter. He conceded that he was removable but timely applied for asylum, withholding of removal, and CAT protection, seeking voluntary departure in the alternative. He claimed that he feared persecution on account of his membership in two social groups, which he described as "Guatemalan adolescents and/or youths" and "Guatemalan adolescents and/or youths who resist gang recruitment because of personal belief."[1] J.A. 83.

At a hearing before an Immigration Judge, Flores-Turcios recounted that when he was eighteen, MS-13 gang members assaulted him and threatened to kill him and his family if he did not make recurring payments. He explained that the "gangs want . . . to make money through extorting the people there, and . . . those who cannot pay are recruited." J.A. 135. He claimed the gang "want[ed] to recruit everyone and everybody who's young," with the "purpose" of "mak[ing] the ranks bigger." J.A. 128. He said that he did not file

---

[1] Flores-Turcios set forth five groups before the IJ, pursued three of them before the Board, and advances only these two in his petition for review to this Court. Only those two are properly before us. *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 248–49 (4th Cir. 2013).

a police report because he believed the police were either corrupt or powerless to stop the gangs. Instead, he left school and found work to make the payments. After the extortion escalated, he departed for the United States.

To show that Guatemalan youth face persecution, Flores-Turcios submitted a United Nations report that described the violence directed at a "child or youth and/or their family members" should the child or youth refuse to join a gang. J.A. 360. He also testified that he feared that upon his return, MS-13 members would not only continue to extort and recruit him but also punish him for his defiance.

The IJ credited Flores-Turcios's testimony and evidence but concluded that his proposed groups were not legally cognizable and that Flores-Turcios failed to show that his membership in those groups was a central reason he was targeted. On his CAT claim, the IJ found no past torture, determined Flores-Turcios failed to show he would more likely than not face torture upon return, and concluded that any future mistreatment would not occur with official acquiescence. The IJ denied all requested relief, and Flores-Turcios appealed.

The Board adopted the IJ's decision and wrote separately to address Flores-Turcios's arguments on appeal. The Board concluded that the IJ did not clearly err in finding that the gang targeted Flores-Turcios for economic reasons, rather than on account of his membership in his proposed social groups, "in light of [Flores-Turcios's] testimony that he was recruited to increase the size of the gang." J.A. 7. It also found no clear factual or legal error in the IJ's denial of CAT protection. The Board denied asylum, withholding of removal, and CAT protection, but remanded on the issue of voluntary departure.

3

In his petition for review, Flores-Turcios challenges the Board's denial of asylum, withholding of removal, and CAT protection.[2]

## II.    DISCUSSION

Where the Board adopts and supplements the IJ's opinion, we review both decisions, considering the IJ's decision to the extent the Board adopted it. *Garcia Hernandez v. Garland*, 27 F.4th 263, 266 n.* (4th Cir. 2022). We review factual findings—including nexus and likelihood of torture—for substantial evidence, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Lopez-Benitez v. Garland*, 91 F.4th 763, 768 (4th Cir. 2024). We review the Board's legal conclusions *de novo*. *Lopez-Benitez*, 91 F.4th at 768.

### A.    Asylum And Withholding Of Removal

Those standards of review resolve the asylum and withholding-of-removal claims. To qualify for asylum, Flores-Turcios must establish a nexus between his "well-founded fear of persecution" upon return to Guatemala and his "membership in a particular social group." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); *Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014). He must prove that membership in the group was at least "one central reason," 8 U.S.C. § 1158(b)(1)(B)(i)—not merely an "incidental, tangential, superficial, or subordinate" reason—for his persecution. *Cortez-Mendez v. Whitaker*, 912 F.3d 205, 209

---

[2] We have jurisdiction to review the Board's order denying relief from removal but remanding on the issue of voluntary departure, because it is a final order under 8 U.S.C. § 1252. *Qingyun Li v. Holder*, 666 F.3d 147, 149 (4th Cir. 2011).

(4th Cir. 2019) (quoting *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009)). Whether this nexus exists is a question of fact entitled to deference, and the Board properly reviewed it only for clear error. *Crespin-Valladares v. Holder*, 632 F.3d 117, 128 (4th Cir. 2011). Assuming without deciding that Flores-Turcios's proposed social groups were legally cognizable, we conclude that the Board's finding of no nexus is supported by substantial evidence, which is fatal to his asylum claim.[3] *See Cortez-Mendez*, 912 F.3d at 209, 211; *Madrid-Montoya v. Garland*, 52 F.4th 175, 179 (4th Cir. 2022).

Substantial evidence supports the Board's finding that neither Flores-Turcios's youth nor his personal-belief-based resistance to being recruited was a central reason for his targeting. The IJ relied on Flores-Turcios's own testimony about why the gang came after him. *See Toledo-Vasquez v. Garland*, 27 F.4th 281, 288 (4th Cir. 2022). He testified that the gang's "purpose" was to "make the ranks bigger," J.A. 128, that it extorted "everyone" in its territory and recruited those who could not pay, J.A. 135, and that he was "no exception," J.A. 128. Nothing in that account ties the gang's attention to his age. To the contrary, when he explained why the gang might pursue him on return, he pointed not to his youth but to the perception that a deportee has money. On this record the agency was permitted to conclude that Flores-Turcios failed to show that youth was a central reason for his persecution. *See Lopez-Benitez*, 91 F.4th at 770.[4]

---

[3] We therefore need not resolve Flores-Turcios's challenges to the Board's determination that his proposed social groups are not cognizable. *See Cortez-Mendez*, 912 F.3d at 209.

[4] And even if his youth played some marginal role, the record would at most make it incidental, not central. *See Quinteros-Mendoza*, 556 F.3d at 164.

To be sure, a gang's general growth motivations may not "preclude the existence of another central reason . . . for that same persecution." *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 950 (4th Cir. 2015). Accordingly, we have found a nexus where a gang singled out a petitioner because of a particular trait, even though the gang's ultimate end was monetary gain. *See Chicas-Machado v. Garland*, 73 F.4th 261, 265–70 (4th Cir. 2023) (finding nexus where a gang targeted an active churchgoer because it "view[ed] her religiosity as an asset" for concealing suspected gang activity); *Perez Vasquez v. Garland*, 4 F.4th 213, 222–23 (4th Cir. 2021) (finding nexus where a gang targeted the petitioner because her U.S.-based family had the ability to pay the extorted demands); *Alvarez Lagos v. Barr*, 927 F.3d 236, 249–51 (4th Cir. 2019) (finding nexus where the timing and content of threats supported the conclusion that the petitioner was targeted because she was an unmarried mother). In each case, the petitioner pointed to some evidence that her protected trait factored into the gang's decisionmaking and explained why the gang targeted the petitioner and not someone else.

Flores-Turcios showed no such evidence. He did not recount any actions or statements by the gang that indicated the gang sought him out because of his youth, or that his youth made him a particularly appealing target.[5] *Perez Vasquez*, 4 F.4th at 224. To the contrary, he claimed that the gang did not single him out at all, as the gang members

---

[5] Flores-Turcios's testimony that he was recruited while returning from school does not establish nexus either. He gave no indication that the gang staked out the school or otherwise specifically targeted students, and the school was within the gang's territory. *Cf. Alvarez Lagos*, 927 F.3d at 249–51 (finding nexus where the gang's threats "deliberately preyed on [the petitioner's protected] status").

6

required everyone who lived in their territory to pay and he was "no exception." J.A. 128.

The gang extorted those with money and recruited those without; he was recruited because

he could not pay. Flores-Turcios's testimony does not alert a factfinder to the salience of

his youth or resistance to recruitment, let alone compel a factfinder to conclude that those

traits factored into the gang's decision to target him and not someone else. Without a more

specific motive, a persecutor's generalized, indiscriminate aim—more members, more

money—does not supply the required nexus. *See INS v. Elias-Zacarias*, 502 U.S. 478,

482–83 (1992) (holding that a generalized motive underlying forced recruitment is

insufficient to establish nexus); *Toledo-Vasquez*, 27 F.4th at 287–88 (no nexus where the

gang was "an equal opportunity persecutor").[6]

Flores-Turcios's contention rests on a U.N. report describing how gangs frequently

recruit children and youths. Such country-conditions evidence can bear on nexus. *See*

*Alvarez Lagos*, 927 F.3d at 250. But nexus is a petitioner-specific inquiry, *Lopez-Benitez*,

91 F.4th at 770, and a report about how gangs treat Guatemalan youth generally does not

compel a contrary conclusion about why this gang targeted this petitioner. The agency

credited Flores-Turcios's *own account* of why the gang came after him: He lived in the

---

[6] This conclusion is consistent with cases in which we have found nexus established. In *Hernandez-Avalos v. Lynch*, for example, we explained that gang members "threatened Hernandez in order to recruit her son into their ranks, but they also threatened Hernandez, rather than another person, because of her family connection to her son." 784 F.3d 944, 950 (4th Cir. 2015). So the protected characteristic was what drew the persecutor to the particular victim, and thus constituted a central reason for persecution in conjunction with a generalized recruitment motive. Here, by contrast, Flores-Turcios's own account establishes that the gang's attention did not turn on his youth or his resistance; he was caught up in the same extortion and recruitment that the gang imposed on *everyone* in its territory.

7

gang's territory, where everyone was required to pay; he could not pay, so the gang tried to recruit him; and he feared returning because the gang would think he had money and would punish his earlier refusal. An agency commits no legal error by crediting the explanation a petitioner "himself offered most consistently," *i.e.*, "that the only central reason that [he] was targeted was because everyone was." *Lopez-Benitez*, 91 F.4th at 770. Because Flores-Turcios can point to no evidence that *compels*, rather than merely supports, a contrary finding, his challenge to the denial of asylum fails. *See Madrid-Montoya*, 52 F.4th at 182.

Because Flores-Turcios fails to satisfy asylum's nexus requirement, he necessarily "will be unable to satisfy the higher standard for showing withholding of removal," which requires a "clear probability of persecution on account of" his membership in a particular social group. *Lopez-Benitez*, 91 F.4th at 768 (citations omitted); *see also Diaz-Hernandez v. Garland*, 104 F.4th 465, 476–77 (4th Cir. 2024) (holding that the nexus standards in asylum and withholding-of-removal claims are equally demanding). We therefore deny his petition on these claims.

### B.      Convention Against Torture

To qualify for CAT protection, Flores-Turcios must prove that "it is more likely than not that he would be tortured if removed to [Guatemala]." *Zelaya v. Holder*, 668 F.3d 159, 167 (4th Cir. 2012). Torture requires the intentional infliction of severe pain or suffering, for a prohibited purpose, by or with the acquiescence of a public official or other person acting in an official capacity. *Id.*; 8 C.F.R. § 1208.18(a)(1). A public official acquiesces if the official "ha[d] awareness of such activity and thereafter breach[ed] his or

her legal responsibility to intervene to prevent" it, including by turning a blind eye. 8 C.F.R. § 1208.18(a)(7); *Mulyani v. Holder*, 771 F.3d 190, 200 (4th Cir. 2014). The IJ's prediction of how officials will act is a factual question; whether that conduct qualifies as acquiescence is a legal judgment. *Funez-Ortiz v. McHenry*, 127 F.4th 498, 505 (4th Cir. 2025).

Flores-Turcios's lead argument is procedural: The Board never separated the factual findings it reviewed for clear error from the legal judgments it reviewed *de novo*. *See Funez-Ortiz*, 127 F.4th at 504–05. We review the Board's application of its standard of review *de novo* and conclude that its shorthand does not require remand here. The Board "discern[ed] no clear factual or legal error in the [IJ's] determination" that Flores-Turcios failed to establish a likelihood of torture with official acquiescence. J.A. 7. That articulation tracks the bifurcated standard for the Board's review of the IJ's decision—"clear" error for facts, independent judgment for law. J.A. 7; *Funez-Ortiz*, 127 F.4th at 504–05. It also accords with the structure of a CAT claim, which presents both factual and legal determinations for the Board's review. *Funez-Ortiz*, 127 F.4th at 505. Flores-Turcios identifies no factual finding the Board reviewed too deferentially and no legal question it left undecided. Absent that, the claimed ambiguity is not a basis for remand.

Flores-Turcios also challenges the Board's findings. Because the Board adopted the IJ's findings, we review them directly for substantial evidence.[7] They hold up. The IJ

---

[7] To the extent Flores-Turcios contends the Board abused its discretion by failing to meaningfully address his evidence, the record shows otherwise. *See Zelaya*, 668 F.3d at 168; *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 974 (4th Cir. 2019). The Board reviewed (Continued)

9

found that Guatemalan officials attempt to combat gang violence. The IJ acknowledged the chronic violence in Guatemala but noted that the record established that the government generally attempts to control the gangs and that "police engage regularly in anti-gang operations." J.A. 89. Referencing the country conditions report, the IJ found that although police are understaffed and underfunded, they investigate gang-related crimes, and their anti-gang operations can be so vigorous as to draw accusations of human-rights violations. The IJ also noted that because Flores-Turcios never reported the gang's extortion or recruitment attempts to the police, how the police "would have responded to his particular situation" was "unknown." *Id.* The record thus does not compel a finding that Guatemalan officials would consent to torture, acquiesce in it, or turn a blind eye to it. That defeats the CAT claim.

*              *              *

Substantial evidence supports the agency's dispositive findings: The gang targeted Flores-Turcios to extort money and fill its ranks, not because of a protected ground, and any future harm would not occur with official acquiescence. Those findings doom each claim. The petition for review is

*DENIED.*

---

the IJ's findings and adequately responded to Flores-Turcios's arguments that the IJ made contradictory findings about the likelihood of experiencing general crime and failed to aggregate the risk of torture from all sources. Having addressed the critical issues, the Board was not required to reweigh the evidence or address every argument in detail. *See Nolasco v. Garland*, 7 F.4th 180, 190–91 (4th Cir. 2021).

10